**Jeffrey O. HICKS, on behalf of himself and all others similarly situated, Appellee,**

v.

**Ralph G. CANTRELL, in his official capacity as Commissioner of the Virginia Employment Commission, Defendant,**

and

**Raymond Donovan, in his official capacity as Secretary of the United States Department of Labor, Appellant.**

No. 85–1619.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1986.

Decided Oct. 21, 1986.

Rehearing and Rehearing En Banc Denied Nov. 19, 1986.

Barbara J. Johnson, U.S. Dept. of Labor (Francis X. Lilly, Sol. of Labor, Allen H. Feldman, Acting Associate Sol. for Special Appellate and Supreme Court Litigation, Carol A. De Deo, Appellate Litigation, Washington, D.C., on brief) for appellant.

Steven L. Myers, Richmond, Va., (Barbara G. Mason, Virginia Legal Aid Soc., Inc., on brief) for appellee.

Before WIDENER and WILKINSON, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.

WIDENER, Circuit Judge:

This is an appeal in a class action suit against the Commissioner of the Virginia Employment Commission (Commission) and the Secretary of the United States Department of Labor. The district court held that § 606 of the Federal Supplemental Compensation Act of 1982, 26 U.S.C. § 3304 note (1982) (the Act or 1982 Act) requires the Commission to consider requests for waiver of recoupment of overpayments made to beneficiaries under the Act. The district court also established procedures for notifying claimants of their right to request a waiver of recoupment and established relevant timetables for claimant and Commission action. We find that the Secretary of Labor's interpretation of § 606 to authorize States participating in the Compensation program to establish waiver procedures at their option is reasonable. Consequently, we reverse the judgment of the district court.

The facts of this case are undisputed. Jeffrey Hicks was honorably discharged from the U.S. Marine Corps in 1982. Hicks subsequently received thirteen weeks of federally-funded unemployment compensation benefits for ex-service members. In February 1983, Hicks applied for and received six additional weeks of unemployment compensation under the Act of 1982, 26 U.S.C. § 3304 note (1982). The Commission, which administers the compensation program in Virginia, subsequently determined that Hicks was not entitled to receive benefits. Hicks did not appeal this determination. In September 1983, the Commission notified Hicks that he was liable to repay the $825 in benefits that he had received. Hicks appealed this notice for recoupment of overpayment.

After a hearing, the Commission's Appeals Examiner upheld the notice of overpayment. The Examiner noted that Hicks had received the compensation benefits through no fault of his own. The Examiner concluded, however, that because Hicks was not entitled to the payments, he must repay to the Commission the full amount of compensation benefits that he had received.

Hicks then appealed the Examiner's determination to the Commission itself. The Commission upheld the Appeals Examiner's decision. The Commission found that the Act "does not provide that states *must* grant waivers of overpayments but rather provides that states *may* do so under certain conditions." (Italics in original) The Commission concluded, therefore, that Virginia law was controlling as to whether the Commission must consider requests for waiver of overpayments. Because the relevant Virginia statute, VA.CODE § 60.1–132,[1] does not explicitly provide for waiver of the recoupment of overpayments, the Commission held that Virginia law precluded waiver and attached a liability to repay any overpayment of benefits. The Commission, therefore, required Hicks to repay the $825 of overpayment benefits he had received.

Hicks then filed this class action in federal district court against both the Commissioner and the Secretary of Labor, seeking declaratory and injunctive relief. Hicks asserted that the Commission's refusal to consider requests for waiver of repayment of overpayments, and the Commission's corresponding failure to provide notice to

---

1. VA.CODE § 60.1–132 provides:

Any person who has received any sum as benefits under this title to which he was not entitled shall be liable to repay such sum to the Commission. In the event the claimant does not refund the overpayment, the Commission shall deduct from any future benefits such sum payable to him under this title or the overpayments may be collectible without interest by civil action in the name of the Commission. Provided, the Commission may, for good cause, determine as uncollectible and purge from its records any benefit overpayment which remains unpaid after the expiration of seven years from the date such overpayment was determined, or immediately upon the death of such person or upon his discharge in bankruptcy occurring subsequently to the determination of overpayment.

Any governmental entity which, pursuant to § 60.1–89–2, has reimbursed the Commission for sums paid as benefits under this title to which the claimant was subsequently found not to have been entitled shall be subrogated to the rights of the Commission to recover such sums as set forth hereinabove.

the recipients of overpayments that they may request a waiver, violated both the Act and the U.S. Constitution. Hicks further alleged that the Secretary of Labor's acquiescence in and encouragement of the Commission's refusal to consider waiver requests also violated the Compensation Act and the Constitution.

On cross-motions for summary judgment, the district court, before certifying the class which it later did, held that the Act requires participating States to grant waivers for the recoupment of overpayments if the relevant state agency finds that the overpayment was not the recipient's fault and that repayment would be unfair. In reaching this conclusion, the district court relied primarily on the legislative history of two previous unemployment compensation acts in which Congress allegedly indicated its intention to supplant state law governing recovery of repayments with a uniform national rule requiring waiver of such recoupment if certain requirements were met.[2] Reasoning that statutes containing similar language and sharing a common raison d'etre should be interpreted in the same manner, the district court concluded that in enacting the 1982 Act, which included in § 606 a waiver provision similar to that found in previous unemployment compensation acts, Congress intended to establish a national waiver system similar to that which governed those previous unemployment compensation programs. The district court further concluded that the Commission's policy of refusing to even consider waiver requests violated the Act itself, and therefore was unlawful. Consequently, the district court granted summary judgment to Hicks and all others similarly situated. The Secretary of Labor appealed. Because we find that the district court erroneously rejected the Secretary of Labor's interpretation of the Act, we reverse.

The district court's interpretation of the FSC Act as prohibiting the DOL's optional waiver instructions to the VEC is a conclusion of law. Consequently, our review of this issue is not subject to the clearly erroneous rule. *Smith v. United States*, 336 F.2d 165, 168 (4th Cir.1964).

Section 606 of the Act provides that:

In the case of individuals who have received amounts of Federal supplemental compensation under this subtitle to which they were not entitled, the State is authorized to require such individuals to repay the amounts of such Federal supplemental compensation to the State agency, except that the State agency may waive such repayment if it determines that—

(i) the payment of such Federal supplemental compensation was without fault on the part of any such individual, and

(ii) such repayment would be contrary to equity and good conscience.

FSC Act of 1982, Pub.L. No. 97–248, Title VI, § 606(a)(2)(A), 96 Stat. 702, 705–06 (codified at 26 U.S.C. § 3304 note (1982)).

The Secretary of Labor has interpreted § 606 of the Act to permit States participating in the compensation program to recoup overpayments of benefits and to waive recoupment in appropriate cases. See Letter from William J. Haltigan, Regional Administrator of the U.S. Dep't of Labor, to Ralph G. Cantrell, Commissioner of the Virginia Employment Commission, dated May 21, 1984. The Secretary does not, however, construe the statute as compelling participating States to adopt either recoupment or waiver policies. See *id.* Thus, under the Secretary's interpretation of § 606, participating States may elect to waive overpayments, or may choose not to exercise this authority and require repayment of all FSC overpayments. *Id.* According to the Secretary, twenty-two of the fifty-two States and territories, including Virginia, currently do not consider requests for waiver of recoupment of FSC overpayments.

---

**2.** The district court relied on the legislative history of the Trade Act of 1974, Pub.L. No. 93–618, Title II, 88 Stat. 1978, and on the legislative history of the Emergency Unemployment Compensation Act of 1974, Pub.L. No. 93–572, 88 Stat. 1869.

■ Initially, we recognize that the interpretation of a statute by an agency charged with the statute's enforcement "ordinarily commands considerable deference." *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 107, 99 S.Ct. 1601, 1611, 60 L.Ed.2d 66 (1979). Consequently, if the interpretation represents a "reasonable accommodation of conflicting policies that were committed to the agency's care by the statute, we should not disturb it unless it appears from the statute or its legislative history that the accommodation is not one that Congress would have sanctioned." *United States v. Shimer,* 367 U.S. 374, 383, 81 S.Ct. 1554, 1560, 6 L.Ed.2d 908 (1961). Hicks contends that this court should not accord the Secretary's interpretation of § 606 of the Act this deference both because this interpretation is contrary to the clear Congressional intent behind the section and because the Secretary has not adhered to a consistent interpretation of the section. We disagree.

■ Hicks correctly points out in his brief that the judiciary is the final authority on issues of statutory construction and must reject administrative constructions that are contrary to clear Congressional intent. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). Contrary to the plain meaning of the words of the statute, however, which provides that participating states *may* waive recoupment of FSC overpayments, Hicks argues that in enacting § 606 of the 1982 Act, Congress clearly intended that participating States *must* waive recoupment of overpayments if certain statutory requirements are met. Hicks concedes that in the legislative history of the 1982 Act, Congress did not explicitly address the question of waiver. Consequently, in support of his argument, Hicks relies primarily on the legislative history of temporary unemployment compensation programs that Congress enacted in the 1970's. See Emergency Jobs and Unemployment Assistance Act of 1974, Pub.L.

No. 93–567, Title II, 88 Stat. 1845, 1850; Emergency Unemployment Compensation Act of 1974, Pub.L. No. 93–572, 88 Stat. 1869; Trade Act of 1974, Pub.L. No. 93–618, Title II, 88 Stat. 1978. Essentially, Hicks argues that because these prior programs had similar purpose to that of the Act of 1982 and contained waiver provisions with language similar, though not identical, to that contained in § 606 of the 1982 Act, we should construe § 606 of the Act of 1982 as the Secretary of Labor construed the waiver provision in the Emergency Jobs and Unemployment Assistance Act of 1974; namely, as establishing a national rule requiring state agencies to consider requests for waivers of recoupment of FSC overpayments and to grant such requests if the state agency finds that the overpayment was not the recipient's fault and that requiring repayment would be unfair. See 20 C.F.R. § 619.13(b)(2) (1976). Contrary to the district court, we find this argument unpersuasive because we conclude that the silent legislative history concerning the waiver provision in the 1982 Act simply does not speak so loud (indeed, its best light from the plaintiff's view is that it is ambiguous) that it should overcome the plain meaning of the word "may" as it is used in § 606. See *United States v. Rodgers,* 461 U.S. 677, 708, 103 S.Ct. 2132, 2150, 76 L.Ed.2d 236 (1983) (ambiguous legislative history cannot overcome plain meaning of words Congress has used in statute).

As noted above, Congress did not explicitly address the issue of waiver in the legislative history of the Act of 1982. There is, moreover, no clear indication in the legislative history of the Act of 1982 that Congress intended to pattern that act after the prior temporary unemployment compensation programs that Congress had enacted in the 1970's. Thus, although there are indications that certain predecessor bills to H.R. 4961, the bill that eventually incorporated the Act of 1982, were modeled after the prior temporary federal unemployment program,[3] there is no indication in any of

---

**3.** There are indications, for example, that H.R.

6878 was modeled after these prior federal un-

the history surrounding H.R. 4961 that Congress modeled that bill after those prior programs. Given the silence of the legislative history on the issue of waiver and the ambiguity of the 1982 Act's legislative connection to prior unemployment compensation acts, we cannot conclude that in enacting § 606 of the 1982 Act, Congress unambiguously intended, despite its use of the word "may" in the statute, to *require* states to consider waiver requests under the statute. See *Watkins v. Cantrell*, 736 F.2d 933, 944 (4th Cir.1984) (court should give deference to agency's interpretation of statute if statute's language and legislative history do not compel contrary conclusion). If Congress did intend to implement a national waiver provision through § 606, it did not evince such intent so clearly as to justify our overriding the Secretary's interpretation of the statute's plain meaning. See *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 6 L.Ed.2d 908 (1984) (stating that if Congressional intent is ambiguous with respect to specific issue, court may not substitute its own construction of statutory provision in place of reasonable administrative interpretation); *Doski v. M. Goldseker Co.*, 539 F.2d 1326, 1332–33 (4th Cir.1976) (holding that with no clear explanation of legislative purpose, legislative history was not definitive

enough to overcome statute's unambiguously clear wording).

Hicks also contends that the Secretary's interpretation of § 606 is not entitled to deference because the Secretary has changed his interpretation several times since the statute's enactment.[4] In his argument on this point, however, Hicks does not take into account the Supreme Court's recent pronouncement on the deference that courts must accord to admittedly inconsistent administrative interpretations of a statute. In *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, the Court stated:

> The fact that the agency has from time to time changed its interpretation of [a statutory term] does not, as respondents argue, lead us to conclude that no deference should be accorded the agency's interpretation of the statute. An initial agency interpretation is not instantly carved in stone. On the contrary, the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis.

467 U.S. 837, 860, 104 S.Ct. 2778, 2791, 6 L.Ed.2d 908 (1984).

Thus, although the Secretary may have varied his interpretation of § 606 a number of times, we must accord his interpretation

---

employment compensation programs. See, e.g., STAFF OF HOUSE COMM. ON WAYS AND MEANS, 97TH CONG., 2d SESS., EXPLANATION OF H.R. 6878, 47 (Comm.Print 1982). Similarly, there are indications that H.R. 6369 also was patterned after the prior federal unemployment compensation programs. See H.R. REP. NO. 587, 97th Cong., 2d Sess. 11 (1982).

**4.** On December 3, 1982, the Secretary of Labor issued instructions to state agencies in which he informed them that each state was free to elect whether it would consider waiver requests for recoupment of overpayments. See General Administration Letter No. 2–83, § II(L)(2), 47 Fed. Reg. 54,705, 54,714 (1982). In 1983, the Secretary revised these instructions to require States to include in their notices of overpayment to recipients information concerning the waiver provisions in § 606. See Change 2 to General Administration Letter No. 2–83, § II(L)(2), 48 Fed.Reg. 16,772, 16,777 (1983). This revision arguably indicated a shift in the Secretary's in-

terpretation of the waiver requirement, to reflect a requirement that each State participating in the program must consider requests for waiver of recoupment of overpayments. On February 3, 1984, the Secretary again revised his instructions to state agencies by deleting the requirement that overpayment notices include waiver information. See Unemployment Insurance Program Letter No. 7–84, § II(L)(2), 49 Fed.Reg. 4,271, 4,281 (1984). Despite this deletion, in the spring of 1984, the Secretary issued unpublished instructions, directing States to implement waiver procedures. The Secretary rescinded these instructions during the next months, adopting instead the interpretation that he currently espouses, namely, that § 606 of the Act of 1982 does not require participating States to adopt either recoupment or waiver policies. E.g., Letter from Sammie L. Bryant, Associate Regional Administrator for Unemployment Insurance, U.S. Dep't of Labor, to all State Employment Security Agencies, dated June 1, 1984.

deference so long as that interpretation is reasonable. See *id.* at 467 U.S. at 866, 104 S.Ct. at 2803 (challenge to agency construction of statutory term must fail if challenge centers on wisdom of agency's policy, rather than on whether construction is reasonable choice within gap left open by Congress). The Secretary's current interpretation of the term "may" in § 606 recognizes the term's generally accepted discretionary definition. See *United States v. Rodgers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 2149, 76 L.Ed.2d 236 (1983) (word "may" in statute usually implies some degree of discretion); *Califano v. Yamasaki*, 442 U.S. 682, 693–94 n. 9, 99 S.Ct. 2545, 2554 n. 9, 61 L.Ed.2d 176 (1979) (stating by way of comparison to mandatory language that various statutes providing that federal agency "may" waive recoupment of overpayments of benefits are "entirely permissive" rather than mandatory). Lacking a clear Congressional intent to the contrary, we must conclude that the Secretary's interpretation is both reasonable and permissible, although it may be inconsistent with prior interpretations.

To summarize, we conclude that the district court erred in failing to accord proper deference to the Secretary of Labor's interpretation of § 606 of the 1982 Act. We further conclude that the district court erroneously substituted its own construction of a statutory provision for a reasonable administrative interpretation. Consequently, we reverse the district court's judgment.

The plaintiffs raised certain constitutional questions and a claim under 42 U.S.C. § 1983 in their pleadings, in addition to the questions we have discussed. The district court properly did not express any opinion on these matters. Ordinarily, we would remand for the plaintiffs to have the opportunity to present their views on these questions to the district court. Because of the nature of our opinion, however, holding that the Virginia statute and its construction by the Virginia authorities is consistent with the federal statute, those other claims are now not of arguable merit, and, accordingly, we simply reverse the judgment of the district court rather than remand for further action.

Accordingly, the district court's judgment is

REVERSED.