**James MILAM, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 87–3147.**

United States Court of Appeals, Fourth Circuit.

Argued Feb. 10, 1989.

Decided May 12, 1989.

Rehearing and Rehearing In Banc Denied June 14, 1989.

---

**224**

Clyde A. Ogg, Arlington Heights, Ill., for petitioner.

Michael John Denney, Counsel for Appellate Litigation (George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol. for Black Lung Benefits, U.S. Dept. of Labor, Washington, D.C., on brief) for respondent.

Before PHILLIPS and CHAPMAN, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, sitting by designation.

CHAPMAN, Circuit Judge.

This appeal presents an issue of first impression for this court; whether a Part B claimant under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* (1982) (the "Act"), who has had his benefits offset by the excess earnings offset provision of the Act, 30 U.S.C. § 922(b),[1] may receive cash benefits under Part C of the Act.[2] We hold that 30 U.S.C. § 924(a)[3] was intended to provide only additional medical benefits to Part C claimants, and a Part B claimant, who has had his benefits offset, is nevertheless deemed a Part B recipient. Therefore, we affirm the Benefits Review Board's decision which denied Milam's request for cash benefits under Part C.

In 1973, James Milam filed a claim for benefits pursuant to Part B of the Act. That claim was approved by the Social Security Administration on November 28, 1973, with a finding that Milam suffered from complicated pneumoconiosis. However, because Milam earned more than $2100.00 per year, his benefits were offset by the excess earnings offset provision applicable to Part B. As of this date, he has received no cash benefits because he has continued to earn in excess of the offset limitation.

On February 29, 1980, Milam filed an application for cash benefits under Part C of the Act. By letter dated October 2, 1981, the Department of Labor denied the request for Part C benefits because the Act and regulations thereunder provide solely for the payment of medical benefits under Part C to miners whose claims for Part B benefits had been approved.

At Milam's request, the matter was referred to an Administrative Law Judge. In

---

**1.** (b) Reduction of benefits

Notwithstanding subsection (a) of this section, benefit payments under this section to a miner or his widow, child, parent, brother, or sister shall be reduced, on a monthly or other appropriate basis, by an amount equal to any payment received by such miner or his widow, child, parent, brother or sister under the workmen's compensation, unemployment compensation, or disability insurance laws of his State on account of the disability of such miner due to pneumoconiosis, and the amount by which such payment would be reduced on account of excess earnings of such miner under section 203(b) through (1) of the Social Security Act [42 U.S.C.A. § 403(b) to (1)], if the amount paid were a benefit payable under section 202 of such Act [42 U.S.C.A. § 402]. This part shall not be considered a workmen's compensation law or plan for purposes of section 224 of such Act [42 U.S.C.A. § 424a].

**2.** 30 U.S.C. § 922(b).

"Part B claims are those filed after the inception of the Act and before July 1, 1973. Part C claims are those filed after December 31, 1973. Part C was designed to shift the burden of Black Lung Benefits from the Government to the coal industry." *Director, OWCP v. Forsyth Energy,* 666 F.2d 1104, 1111 (7th Cir.1981).

**3.** 30 U.S.C. § 924.

(a) Claims filed before December 31, 1973
(1) No claim for benefits under this part on account of total disability of a miner shall be considered unless it is filed on or before December 31, 1973, or in the case of a claimant who is a widow, within six months after the death of her husband or by December 31, 1973, whichever is the later.

a decision dated August 27, 1985, the ALJ denied Milam's request for Part C benefits but found that Milam's Part B benefits had been improperly offset by subsequent wages since there had been a finding of complicated pneumoconiosis.[4] Milam appealed to the Benefits Review Board, which affirmed the ALJ's decision on July 30, 1987. On appeal, Milam challenges the finding that he is not entitled to Part C benefits.

The issue presented in this appeal is whether a Black Lung Benefits claimant, who has been approved for Part B benefits but has not received any cash benefits thereunder because of the excess earnings offset provision, may receive cash benefits under Part C of the Act. Although 20 C.F.R. § 727.103(d) prohibits duplicative receipt of cash benefits under Parts B and C of the Act, Milam contends that he never received any cash benefits under Part B because of the offset and is, therefore, entitled to receive cash benefits under Part C.

The language and construction of 30 U.S.C. § 924a are the obvious starting points of Milam's claim. Section 924a provides that:

The Secretary of Health and Human Services shall notify each miner receiving benefits under this part on account of his or her total disability who such Secretary has reason to believe became eligible for medical services and supplies on January 1, 1974, of his or her possible eligibility for such benefits. Where such Secretary so notifies a miner, the period during which he or she may file *a claim for medical services and supplies under part C* of this subchapter shall not terminate before six months after such notification is made.

*Id.* (emphasis added). Pursuant to § 924a, the Secretary of Labor issued regulations providing that a claim filed under such notification would "be considered a claim for medical benefits only." 20 C.F.R. § 725.701A(b)(1). Although Milam's claim for cash benefits under Part B was ap-

proved, he, nevertheless, contends that these sections do not apply to him since he never actually received any Part B cash benefits because of the excess earnings offset.

There is a basic presumption in statutory interpretation that "[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied in the absence of a contrary legislative intent." *Andrus v. Glover Construction Co.*, 446 U.S. 608, 616–17, 100 S.Ct. 1905, 1910, 64 L.Ed.2d 548 (1980). Moreover, when a court reviews an agency's construction of a statute which it administers, the court must give effect to the "unambiguously expressed intent of Congress," if Congress has directly spoken to the precise question at issue. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed. 2d 694 (1984). However, if the statute is silent or ambiguous on the specific issue, then the court should give controlling weight to legislative regulations of the agency if they represent "a reasonable accommodation of conflicting policies that were committed to the agency's care by the statute." *Id.* at 845, 104 S.Ct. at 2783. *Accord Hicks v. Cantrell*, 803 F.2d 789, 793–94 (4th Cir.1987).

The language of § 924a itself expressly provides an exception to Part B recipients against the time bar for Part C claims only for medical services and supplies. The statute is silent on cash benefits, as to both their availability or an extension for filing. Since § 924a does not discuss the instant issue, or at the very least is ambiguous, we find that the regulation barring Part C cash benefits claims for Part B claimants should stand provided it is not contrary to Congress' intent.

Section 924a was adopted in 1977 as part of the Black Lung Benefits Reform Act of 1977. Pub.L. 95–239, 92 Stat. 95 (1977). The overall purpose of the Reform Act was to establish more lenient standards of eligibility and to provide a mechanism for re-

---

**4.** Under this finding, Milam is entitled to receive all the back Part B cash benefits which were improperly withheld pursuant to the excess earnings offset provision.

view of all claims pending or denied under the old standards. *Director, OWCP v. Forsyth Energy*, 666 F.2d 1104, 1106 (7th Cir.1981). However, it is important that the Reform Act was not intended to provide review for claims approved under the old standards. The immediate purpose of § 924a was expressed by Congressman Perkins, one of the sponsors of the amendments, when he stated that § 924a would provide a "renewed opportunity" for Part B beneficiaries to file Part C medical benefits claims "without regard to the current 3–year statute of limitations." 124 Cong. Rec. 3427 (daily ed. Feb. 15, 1978). Therefore, we conclude that Congress intended to provide approved Part B claimants with an additional opportunity to receive medical benefits under Part C but not a second chance to seek cash benefits.

Consequently, we find the holdings of two Benefits Review Board cases persuasive. In *Kosh v. Director, OWCP*, 8 B.L.R. 1–168 (1985), *aff'd* 791 F.2d 918 (3rd Cir.1986), the claimant had been granted Part B benefits which had been offset by the excess earnings provision and was seeking cash and medical benefits under Part C. The Board found that the claimant was entitled only to medical benefits under Part C since "the text of § [924a] specifically provides eligibility for 'medical services and supplies' to Part B beneficiaries and is devoid of reference to eligibility for further benefits." *Id.* at 1–171.

Likewise, in *Stowers v. Director, OWCP*, 9 B.L.R. 1–124 (1986), a Part B claimant who had his benefits offset under the excess earnings offset provision sought cash benefits under Part C. In rejecting Stowers' argument that he was not receiving benefits because of the offset, the Board held that "30 U.S.C. § 924a[ ] and the legislative history ... are devoid of any reference to a provision for further benefits for Part B recipients subject to the [Social Security Administration] excess earnings offset provision." *Id.* at 1–125. We adopt the Board's reasoning that a Part B beneficiary who has had his award offset under the excess earnings offset provision is not entitled to circumvent the offset by seeking cash benefits under Part C.

Although Milam's Part B benefits were withheld, he is not entitled to receive cash benefits under Part C. Double recovery of cash benefits under the Act is not permitted, and Milam has been approved for Part B cash benefits. Because the issue was not before us on this appeal, we make no judgment as to whether Milam's Part B benefits were improperly offset by the Social Security Administration. The decision of the Benefits Review Board denying Milam's claim for Part C. benefits is

AFFIRMED.