**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES L. HANAUER,
Plaintiff-Appellee,

v.

ROBERT B. REICH, SECRETARY OF
LABOR,
Defendant-Appellant.

No. 95-2499

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
Jackson L. Kiser, Chief District Judge.
(CA-94-668-R)

Argued: March 8, 1996

Decided: May 6, 1996

Before HAMILTON and WILLIAMS, Circuit Judges, and
WILLIAMS, Senior United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Vacated and remanded by published opinion. Judge Hamilton wrote
the opinion, in which Judge Williams concurred. Senior Judge Wil-
liams wrote a concurring and dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Irene Marietta Solet, Civil Division, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.
Charles Robinson Allen, Jr., Roanoke, Virginia, for Appellee. **ON**

**BRIEF:** Frank W. Hunger, Assistant Attorney General, Robert P. Crouch, Jr., United States Attorney, Michael Jay Singer, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.

_____

## OPINION

HAMILTON, Circuit Judge:

James L. Hanauer, a former federal employee receiving benefits under the Federal Employees' Compensation Act, 5 U.S.C. §§ 8101-93 (FECA), brought this action against Secretary of Labor Robert Reich (the Secretary) challenging the Secretary's refusal to consider Hanauer's request to receive his remaining FECA benefits in a lump sum. The district court determined that the Secretary violated a clear statutory mandate in FECA requiring individual adjudications of requests for lump-sum payment of benefits. Accordingly, the district court remanded the case to the Secretary for an individualized adjudication of Hanauer's request. The Secretary appeals. Concluding that FECA does not contain a clear statutory mandate requiring an individual adjudication of Hanauer's request for lump-sum payment of his remaining benefits, we vacate the district court's decision and remand for the district court to dismiss for lack of subject matter jurisdiction.

I.

On June 12, 1986, while acting in the course of his employment with the National Park Service, Hanauer suffered a permanent and disabling injury. Since that date, he has been receiving periodic FECA wage-loss benefits.

In 1994, Hanauer requested that the Secretary pay his remaining benefits in a lump sum pursuant to 5 U.S.C. § 8135(a), which gives the Secretary discretion to order payment of wage-loss benefits and other benefits in a lump sum if, <u>inter alia</u>, the beneficiary is about to become a nonresident of the United States. Hanauer asserted that he intended to move to Canada. The Secretary summarily denied the request, relying on 20 C.F.R, § 10.311, which provides that lump-sum

2

payment of wage-loss benefits will no longer be made. Hanauer then brought this action seeking a declaratory judgment that 20 C.F.R. § 10.311 is void because it violates 5 U.S.C.§ 8135(a). Hanauer also sought an order requiring the Secretary to pay his remaining benefits in a lump sum. The Secretary moved to dismiss for lack of subject matter jurisdiction, or, in the alternative, for summary judgment.

The district court concluded that it had subject matter jurisdiction and held that Hanauer was entitled to an individualized determination of his request for lump-sum payment of his remaining benefits. Accordingly, the district court remanded the case to the Secretary to conduct such an individualized determination. The Secretary appeals.

II.

Before turning to the merits of this case, we pause briefly to consider whether the district court's order is final and therefore subject to appellate review. We have jurisdiction over appeals from final decisions of district courts. 28 U.S.C. § 1291. A district court's order remanding a case to an administrative agency is usually not a final, appealable decision under 28 U.S.C. § 1291. See Culbertson v. Secretary of Health & Human Servs., 859 F.2d 319, 323 (4th Cir. 1988). But if a district court order remanding a case to an administrative agency will be effectively unreviewable after a resolution of the merits, the order is a final decision for purposes of 28 U.S.C. § 1291. See Travis v. Sullivan, 985 F.2d 919, 922 (7th Cir. 1993); cf. Culbertson, 859 F.2d at 323 (holding that the court had jurisdiction over an appeal from an order remanding a case to an agency because the order "operate[d] as a final denial of [a party's] claim").

The decision on appeal here is the district court's order remanding this case to the Secretary for an individualized determination of Hanauer's request for lump-sum payment of his remaining benefits. This order will be unreviewable after the Secretary's decision on remand, because the Secretary's decision "allowing or denying a payment under [FECA] is . . . final and conclusive for all purposes" and "not subject to review . . . by a court by mandamus or otherwise." 5 U.S.C. § 8128(b). Therefore, the district court's order remanding this case to the Secretary is final and immediately appealable for purposes of 28 U.S.C. § 1291.

Having concluded that the district court's order is final and immediately appealable, we proceed to consider the Secretary's argument that the district court did not have jurisdiction to review the Secretary's refusal to pay Hanauer his remaining benefits in a lump sum.

III.

Courts will decline to review agency actions only upon a showing that Congress clearly intended to restrict access to judicial review. See Lindahl v. Office of Personnel Management, 470 U.S. 768, 778 (1985). Here, the Secretary argues that 5 U.S.C.§ 8128(b) manifests Congress' clear intent to bar judicial review. That section provides:

> The action of the Secretary or his designee in allowing or denying a payment . . . is--
>
> (1) final and conclusive for all purposes and with respect to all questions of law and fact; and
>
> (2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128(b).

The Supreme Court has described § 8128(b) as an example of the unambiguous and comprehensive language that Congress uses when it "intends to bar judicial review altogether." Lindahl, 470 U.S. at 779-80 & n.13. But even when the statutory language bars judicial review, courts have recognized that an implicit and narrow exception to the bar on judicial review exists for claims that the agency exceeded the scope of its delegated authority or violated a clear statutory mandate. See, e.g., Staacke v. United States Secretary of Labor, 841 F.2d 278, 281 (9th Cir. 1988). This exception was first recognized in Leedom v. Kyne, 358 U.S. 184 (1958).

In Kyne, the National Labor Relations Board certified a collective bargaining unit consisting of both professional and nonprofessional employees. This certification was in direct conflict with a provision of the National Labor Relations Act (NLRA). The president of a labor

4

organization brought suit against members of the Board in district court, asserting that the Board had exceeded its statutory authority. The Board argued that the NLRA's provisions establishing judicial review of certain Board actions in the court of appeals indicated Congress' intent to bar review of any Board action in the district court. The Supreme Court disagreed, holding that the district court had jurisdiction "to strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the [NLRA]." Id. at 188.

Although we have relied on the Kyne exception to allow challenges to agency actions on the ground that they exceeded the agency's delegated authority, see, e.g., Champion Int'l Corp. v. United States EPA, 850 F.2d 182, 185-86 (4th Cir. 1988), we have not previously considered the applicability of the Kyne exception to § 8128(b). Other courts, however, have recognized that the Kyne exception applies to § 8128(b). See, e.g., Staacke, 841 F.2d at 281 (citing Kyne and holding that "jurisdiction exists where [the Secretary of Labor] is charged with violating a clear statutory mandate or prohibition"); see also Brumley v. United States Dep't of Labor, 28 F.3d 746, 747 (8th Cir. 1994), cert. denied, 115 S. Ct. 734 (1995); Woodruff v. United States Dep't of Labor, 954 F.2d 634, 639 (11th Cir. 1992); Owens v. Brock, 860 F.2d 1363, 1367 (6th Cir. 1988); but see Paluca v. Secretary of Labor, 813 F.2d 524, 527-28 (1st Cir. 1987) (stating, without considering Kyne, that "[f]ederal employees have no right to appeal compensation decisions on FECA statutory grounds"), cert. denied, 484 U.S. 943 (1987).

The district court held that the Kyne exception applies here. The district court acknowledged that § 8128(b) generally bars judicial review of any action by the Secretary denying a payment under FECA. But the district court held that it had jurisdiction under the Kyne exception to review the Secretary's denial of Hanauer's request that his remaining benefits be paid in a lump sum, because Hanauer claimed that this denial violated a clear statutory mandate in FECA.

The Secretary argues that the district court erred in holding that the Kyne exception applies in this case. He relies principally on the decision of the Supreme Court in Board of Governors v. MCorp Financial, Inc., 502 U.S. 32 (1991). In MCorp, the plaintiff, a bank holding

5

company, sought to enjoin the Board of Governors of the Federal Reserve System from prosecuting an administrative proceeding against it for its alleged violation of a Board regulation. The applicable banking regulatory statutes established a system for judicial review of Board actions. Under this system, the court of appeals was authorized to review final board orders. But no court had jurisdiction to enjoin the Board's administrative proceedings. [1] Nevertheless, the Fifth Circuit held that the district court had jurisdiction to enjoin the administrative proceeding under the Kyne exception because the plaintiff alleged that the Board's promulgation and enforcement of the regulation exceeded its statutory authority. MCorp Fin., Inc. v. Board of Governors, 900 F.2d 852, 857-58 (5th Cir. 1990).

The Supreme Court reversed, holding that the case differed from Kyne in two ways. First, in Kyne, the Board's interpretation of the NLRA "would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights." MCorp, 502 U.S. at 43. In MCorp, however, the statutory scheme expressly provided the plaintiff "with a meaningful and adequate opportunity for judicial review of the validity [and application] of the . . . regulation" once the Board issued a final order. Id. Second, in Kyne, the Board contended that a statute providing for judicial review of certain board actions implied, by its silence, a preclusion of review of the challenged action. In MCorp, however, the statute clearly precluded judicial review until the proceeding was completed. See id. at 44.

Like the statutory scheme at issue in MCorp, § 8128(b) contains an unambiguous preclusion of judicial review. But unlike the statutory scheme at issue in MCorp, the statutory scheme at issue here does not provide for judicial review of a final order of the Secretary.[2] We con-

_____

[1] The applicable statute provided:

> [E]xcept as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

12 U.S.C. § 1818(i)(1).

[2] Although FECA contains procedures for administrative review of decisions denying the payment of benefits, see 5 U.S.C. § 8149, such

6

sider this distinction to be critical. Acceptance of the Secretary's argument that § 8128(b) precludes district courts from considering claims that the Secretary violated a clear statutory mandate would, in the words of the Supreme Court, "wholly deprive[claimants] of a meaningful and adequate means of vindicating [their] statutory rights." See MCorp, 502 U.S. at 43. Mindful that we "cannot lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers," Kyne, 358 U.S. at 190, we conclude that MCorp does not compel us to hold that § 8128(b) precludes district courts from considering claims that the Secretary violated a clear statutory mandate.

This view of MCorp is in accord with the Ninth Circuit's interpretation of MCorp. The Ninth Circuit has explicitly rejected the argument that under MCorp, a statute that generally precludes judicial review necessarily precludes judicial review of claims that an agency exceeded the scope of its delegated authority. See United States v. Bozarov, 974 F.2d 1037, 1045 n.8 (9th Cir. 1992), cert. denied, 507 U.S. 917 (1993). Rather, when a claimant would have no other opportunity for meaningful and adequate judicial review of a claim that an agency exceeded its statutory authority, a district court may still consider such a claim, even if a statute precludes judicial review in general. See id.

Our conclusion that the Kyne exception applies here does not end our inquiry into whether the district court had jurisdiction over this case. The Kyne exception allowed the district court to conduct a "cursory review of the merits" of the case to determine whether the Secretary violated a clear statutory mandate. See Champion, 850 F.2d at 186. When the statute in question is capable of two plausible interpretations, the Secretary's decision to adopt one interpretation over the

_____

procedures are not sufficient to allay the concerns that the Kyne exception is intended to address. In MCorp, the Court emphasized that the plaintiff had a meaningful and adequate means of vindicating its claimed statutory rights because it could eventually obtain judicial review in the court of appeals. The purpose of the Kyne exception is to ensure that an agency's violation of a clear statutory mandate is corrected. See Kyne, 358 U.S. at 190. The existence of administrative review within the agency, while laudatory, cannot substitute for judicial review.

7

other does not constitute a violation of a clear statutory mandate. Staacke, 841 F.2d at 282; cf. Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 & n.9 (1984) (holding that when a statute is ambiguous, the court's inquiry is limited to determining whether the agency's interpretation of the statute is reasonable, but recognizing that the judiciary is the final authority on issues of statutory construction and that it must reject administrative constructions that are contrary to clear congressional intent). If a cursory review of the merits reveals that the Secretary did not violate a clear statutory mandate, the case must be dismissed for lack of subject matter jurisdiction. See Champion, 850 F.2d at 190. With these principles in mind, we review the statutory framework of FECA to determine whether the Secretary has violated a clear statutory mandate.

IV.

FECA establishes a comprehensive and exclusive workers' compensation program for federal employees. See 5 U.S.C. § 8116(c). Pursuant to FECA, the government pays compensation for disability or death of an employee resulting from personal injury sustained while in the performance of official duty. 5 U.S.C.§ 8102(a). Benefits provided under FECA include benefits for total or partial disability to compensate for lost wages and "schedule awards" to compensate for permanent loss, or loss of use, of a member or function of the body.**3** See 5 U.S.C. §§ 8105-07. Under 5 U.S.C. § 8124(a), the Secretary:

> shall determine and make a finding of facts and make an award for or against payment of compensation . . . after--
>
> (1) considering the claim presented by the beneficiary and the report furnished by the immediate superior; and
>
> (2) completing such investigation as he considers necessary.

_____

**3** "Schedule awards" are paid pursuant to a compensation schedule, which lists the compensation that will be awarded for loss of various parts of the body, such as arms or legs, or for loss of various functions of the body, such as hearing or vision. See 5 U.S.C. § 8107(c).

Claimants are entitled to hearings on their claims for compensation before a representative of the Secretary. See 5 U.S.C. § 8124(b).

Once a decision to award benefits has been rendered, the amount of benefits is calculated on the basis of the employee's monthly pay. See 5 U.S.C. § 8105-07. These benefits ordinarily are paid in periodic installments. See id. FECA provides, however, that the government's obligation to pay permanent disability benefits:

> may be discharged by a lump-sum payment equal to the present value of all future payments . . . if--
>
> (1) the monthly payment to the beneficiary is less than $50 a month;
>
> (2) the beneficiary is or is about to become a nonresident of the United States; or
>
> (3) the Secretary . . . determines that it is for the best interest of the beneficiary.

5 U.S.C. § 8135(a).

FECA authorizes the Secretary to promulgate rules and regulations necessary for administration and enforcement of FECA. See 5 U.S.C. § 8149. Pursuant to this authority, the Secretary has promulgated regulations implementing the lump-sum payment provision of 5 U.S.C. § 8135(a). Before 1992, the regulation simply tracked the language of the statute. See 20 C.F.R. § 10.311(a) (1992). But the Secretary revised the regulation in 1992 to provide:

> (a)(1) In exercise of the discretion afforded by section 8135(a), the Director has determined that lump-sum payments [of wage-loss benefits] will no longer be made . . . . This determination is based on, among other factors:
>
> (i) The fact that FECA is intended as a wage-loss replacement program;

9

> (ii) The general advisability that such benefits be pro-
> vided on a periodic basis; and
>
> (iii) The high cost associated with the long-term bor-
> rowing that is necessary to pay out large lump sums.

20 C.F.R. § 10.311 (1995). The Secretary will continue to consider requests for lump-sum payment of schedule awards. <u>See</u> 20 C.F.R. § 10.311(b) (1995).

Here, Hanauer was awarded FECA wage-loss benefits for a perma-nent disability resulting from an injury that occurred in the course of his employment. Subsequently, he decided to move to Canada and sought payment of his remaining benefits in a lump-sum under § 8135(a)(2). The Secretary's delegate, a Department of Labor claims examiner, <u>see</u> 20 C.F.R. § 10.130, summarily denied Hanauer's request, stating that pursuant to 20 C.F.R. § 10.311, "lump-sum pay-ments of wage-loss compensation are no longer considered." (J.A. 16). Hanauer then brought this action in the district court, alleging that 20 C.F.R. § 10.311 is void because it conflicts with § 8135(a).

Referring both to § 8135(a) and to § 8124(a), the district court determined that the summary denial of Hanauer's request for lump-sum payment based on 20 C.F.R. § 10.311 violated a clear statutory mandate in FECA requiring individualized adjudications of requests for lump-sum payment of benefits. Our review of § 8135(a) and § 8124(a) convinces us, however, that neither statute clearly mandates individualized adjudications of requests for lump-sum payment of benefits.

As Hanauer concedes, Congress' use of the word "may" in § 8135(a) confers discretion on the Secretary to decide whether to grant a request for lump-sum payment of benefits. <u>See Hicks v. Cantrell</u>, 803 F.2d 789, 794 (4th Cir. 1986). Hanauer argues, how-ever, that § 8135(a), in conjunction with § 8124(a), mandates that the Secretary exercise his discretion by considering the merits of each request for lump-sum payment. The Secretary, on the other hand, argues that nothing in § 8135(a) or § 8124(a) prevents him from exer-cising his discretion by promulgating a regulation providing for an

10

across-the-board denial of all requests for lump-sum payment of wage-loss benefits.

The Secretary's argument constitutes an entirely plausible interpretation of § 8135(a). See Fook Hong Mak v. INS, 435 F.2d 728, 730 (2d Cir. 1970) (Friendly, J.) ("The legislature's grant of discretion to accord a privilege does not imply a mandate that this must inevitably be done by examining each case rather than by identifying groups."). Indeed, we have upheld the Secretary's similar interpretation of another statute. See Hicks, 803 F.2d at 792-93. Hicks involved a provision of the Federal Supplemental Compensation Act, which created a federally funded, state-administered benefit program for ex-service members. The statute provided that a state "may" waive the recoupment of overpayments from beneficiaries if it determined that specified conditions were met. Id. at 792. The Secretary of Labor interpreted this statute to allow states to make individual waiver determinations on a case-by-case basis, or to choose not to consider requests for waivers and to require repayment from all individuals who were overcompensated. We held that this interpretation of the statute was reasonable, even though it allowed states to refuse to consider all requests for waivers. Hicks, 803 F.2d at 792-93.**4** Accord-

_____

**4** In Hicks, the Secretary had changed his interpretation of the statute several times. We nevertheless concluded that under Chevron, "we must accord his interpretation deference so long as that interpretation is reasonable." 803 F.2d at 793-94. Subsequent to our decision in Hicks, the Supreme Court clarified that courts should accord less deference to an agency's statutory interpretation that conflicts with the agency's previous interpretation of the same statute. See Pauley v. BethEnergy Mines, Inc. 501 U.S. 680, 698 (1991); INS v. Cardoza-Fonseca , 480 U.S. 421, 446 n.30 (1987). Accordingly, we have noted that to the extent Hicks holds that we must accord "normal" Chevron deference to an agency's statutory interpretation that conflicts with the agency's previous interpretation of the same statute, "Hicks is no longer good law." Malcomb v. Island Creek Coal Co., 15 F.3d 364, 369 n.5 (4th Cir. 1994).

The limitation on Hicks' holding does not affect our reliance on Hicks in this case. Although the Secretary's refusal to consider requests under § 8135(a) for lump-sum payment of wage-loss benefits on a case-by-case basis marks a change in policy, the Secretary's application of § 8135(a) has not been so inconsistent as to render his interpretation of the statute

11

ingly, the Secretary's interpretation of § 8135(a) to allow him to refuse to consider all requests for lump-sum payment of wage-loss benefits is a plausible interpretation. Because the Secretary's interpretation of the statute is plausible, it does not violate a clear statutory mandate. See Staacke, 841 F.2d at 282. The Secretary's interpretation of § 8124(a) is also plausible. The Secretary argues that § 8124(a) only requires individual adjudications of an employee's entitlement to benefits, and not of requests for lump-sum payment of benefits made after the employee's entitlement to benefits has been established.

The language of § 8124(a) supports the Secretary's argument. Under the statute, the Secretary must "determine and make a finding of facts and make an award for or against payment of compensation . . . ." 5 U.S.C. § 8124(a) (emphasis added). This language arguably refers to determinations of a claimant's entitlement to payment of benefits, rather than to determinations regarding the method of payment of those benefits. Additionally, the Secretary must consider "the claim presented by the beneficiary and the report furnished by the [employee's] immediate superior . . . ." 5 U.S.C. § 8124(a)(1) (emphasis added). The emphasized language refers to the report that the employee's "immediate superior" must make "[i]mmediately after an injury to [the] employee" under 5 U.S.C. § 8120. A request for lump-sum payment of benefits made after the claimant's entitlement to benefits has been established does not involve such a report. Thus, it is at least plausible that § 8124(a) does not apply to requests for lump-sum payment of benefits made after the claimant's entitlement to benefits has already been established. Because the Secretary's interpretation of the statute is plausible, it does not violate a clear statutory mandate. See Staacke, 841 F.2d at 282.

V.

In summary, FECA does not contain a clear statutory mandate requiring an individual adjudication of Hanauer's request for lump-

_____

implausible. See Rust v. Sullivan, 500 U.S. 173, 186 (1991) (rejecting "the argument that an agency's interpretation `is not entitled to deference because it represents a sharp break with prior interpretations'" because "`the agency, to engage in informed rulemaking, must consider varying interpretations and the wisdom of its policy on a continuing basis'") (quoting Chevron, 467 U.S. at 862, 863-64).

12

sum payment of his remaining wage-loss benefits. Accordingly, we vacate the district court's decision and remand for the district court to dismiss for lack of subject matter jurisdiction.

<u>VACATED AND REMANDED WITH INSTRUCTIONS</u>

WILLIAMS, Senior District Judge, concurring and dissenting:

I respectfully dissent. This case presents the question of whether the Secretary of Labor, when confronted with a statute which allows him to exercise broad discretion in reviewing requests to change the method of previously awarded benefit payments, may instead decree by mere regulation that he will exercise no discretion and will never undertake a review specified by Congress in a detailed statute. The Secretary, and now the majority, believes that such abdication of statutory role is "prospective discretion" and does not clearly conflict with the express language of FECA. Because I believe that the Secretary's action violates the clear mandate of the statute, and because this type of prospective discretion can only be defined as a euphemism for abuse of discretion, I would affirm the district court. I join the majority's opinion in sections I, II and III but dissent from sections IV and V.

Two separate analyses demonstrate that the district court should be affirmed. The first, created by the Secretary's regulation and pressed unintentionally in his argument on appeal, characterizes the request for lump sum benefits as a new claim. The Secretary must make detailed findings of fact under 5 U.S.C. § 8124 when presented with a new claim but has not done so in this case. The second, using the rubric of the majority, characterizes the lump sum petition as merely a request for modification of benefits under § 8135. While the Secretary may deny lump sum awards even when the conditions of § 8135 are met, the clear mandate of the statute indicates that he may only do so after an actual, case-specific determination of the merits of the request. I address each argument in turn.

I.

Was the plaintiff-respondent's lump sum request a new claim? Section 8121, entitled "Claim," only dictates the form in which the claim

13

shall be presented, and a claim under FECA is nowhere otherwise defined. Therefore one must extrapolate from the treatment of claims in other sections, and, because subsection 8121(1) dictates that claims must be submitted according to § 8122, it becomes necessary to review that section.

Subsection 8122(a) begins by stating that "[a]n original claim for compensation for disability or death must be filed within three years after the injury or death" (emphasis added). One must interpret statutes to avoid redundancy and superfluous language; therefore, the adjective "original" must have some meaning. See, e.g., Westfarm Associates v. Washington Suburban Sanitation Commission, 66 F.3d 669, 678 (4th Cir. 1995), citing Ratzlaf v. United States, 510 U.S. ___, 114 S.Ct. 655, 659 (1994). Redundancy exists unless an original claim is not the only species of claim available. Although subsection (b) refers to claims for latent disability, such claims are still original claims, i.e., claims in the first instance. The drafters of § 8122 distinguished original claims and directed that the limitation periods of that section apply to original claims only. Non-original claims must therefore exist.

Following the logic of the statute and of the Secretary's arguments, a petition for a lump sum payment must be an archetypal non-original claim. As counsel for the Secretary admitted at oral argument, the Secretary would be required to process a lump sum claim through § 8124, with attendant findings of fact, if the lump sum claim were made as part of the original claim. Counsel believes that such findings were not required under the former regulation, which allowed § 8135 requests, and that belief was never challenged in the courts; apparently, so long as the Secretary treated lump sums as a permissible method of paying original claims, his interpretation was respected. However, the Secretary has changed his view on lump sums. In so doing, he reinforced the argument that a lump sum is sufficiently distinct to constitute a new claim.

The Secretary's proffered reason for his regulatory flip-flop is that lump sum awards require long term borrowing which has now become cost prohibitive. It is significant that§ 8135 does not mention cost to the Department of Labor as an appropriate factor for the Secretary's discretionary determination; rather, it is"the best interest of the

14

beneficiary" and not of the government for which Congress was concerned. The Secretary formerly considered the appropriateness of lump sums a mere accounting issue: more money over time versus less money in one payment, a choice which should be neutral to the Secretary after time-value calculations and the averaging effect of the Secretary as a repeat player. When the Secretary held the position that the choice was to him a mere accounting concept, basically a wash, his non-claim position deserved some respect. No longer.

The Secretary has in effect made the argument that a lump sum is not a mere allocation issue but an issue of whether to increase benefits in some fashion. He argues that a lump sum leaves the Secretary with less, and the beneficiary with more; otherwise, his purportedly increased costs would not be prohibitive. Any request for lump sums is thus a request for increase in benefits. The request is a fundamentally different animal from the first claim and becomes, by the Secretary's own logic, a new claim. Where a request for benefits in the first instance is an original claim, then, a request for lump sum must be a non-original claim. Hanauer has therefore filed a claim and deserves a full § 8124 review; since the Secretary failed to perform one, his action should be reversed and the judgment of the district court affirmed.

II.

Does the majority's analysis survive clear-mandate scrutiny? In the only pertinent statement of regulatory powers, FECA provides that "[t]he Secretary of Labor may prescribe rules and regulations necessary for the administration and enforcement of this subchapter." 5 U.S.C. § 8149 (emphasis added). By its decision, the majority allows the Secretary to add two words to the highlighted Congressional language: "or repeal."

A discussion of Hicks v. Cantrell is necessary. The statute in Hicks, the Federal Supplemental Compensation Act ("FSCA"), provided:

> In the case of individuals who have received amounts of Federal supplemental compensation to which they were not entitled, the State is authorized to require such individuals to repay the amounts of such Federal supplemental compen-

15

sation to the State agency, except that the State agency may waive such repayment if it determines that --

(i) the payment of such Federal compensation was without fault on the part of any such individual, and

(ii) such repayment would be contrary to equity and good conscience.

See 803 F.2d at 791. Despite noting that the judiciary "must reject administrative constructions that are contrary to clear Congressional intent," the Court upheld the Secretary's decision. Id. at 792-93. The majority believes that Hicks controls this case because in Hicks as here, the statute used the permissive term "may" instead of the directive language "shall." Even the Secretary does not argue, however, that "may" unambiguously allows his action. The task of interpreting federal benefits statutes, which are always passed in the form of multiple subsections, requires a global understanding of the whole statute and not a narrow focus on a single word. With such an understanding of FECA, Hicks is instructive to but distinguishable from this case.

There are two key factors to distinguish the FSCA from FECA: the general focus of the statutes and the eras in which they were passed. The age of the statutes is a simple point but telling: whereas FSCA in Hicks was passed in 1982, a time in which vast power and great deference to federal agencies was well understood by the drafters, § 8135 of FECA became law in 1916, when agency supremacy was unanticipated. See Act of Sept. 7, 1916, Pub. L. No. 64-266, § 14, 39 Stat. 742, 746*. The clear meaning of "may" in the 1916 statute is discretion after full review of a lump sum request, not discretion to avoid review altogether. To believe otherwise would require unrealistic prescience of the drafters.

The discretionary overtones of "may" "can be defeated by indications of legislative intent to the contrary or by obvious inferences

_____

*While the statute has been updated to modern form with subsection numbers and increased dollar amounts, the key language and phrasing is unchanged.

16

from the structure or purpose of the statute." <u>United States v. Rodgers</u>, 461 U.S. 677, 706 (1983). The structure and purpose of FECA distinguish this case from <u>Hicks</u>. FECA is about fair, efficient compensation for federal employees' injuries - FECA is a remedial statute, which should be interpreted broadly in favor of beneficiaries in order to give the statute full effect. The Internal Revenue Code, of which FSCA was a part, focuses instead on payments to the government; i.e., FSCA is remedial, if at all, in favor of the state. The "may" language in the cited FSCA subsection was also a clause which provided a narrow exception to what, even in that subsection, was the general rule. FECA's § 8135, in contrast, is a free-standing subsection which deals only with lump sums. And finally, the discretionary overtone of "may" is not reinforced by the use of "shall" in various other places in FECA, including § 8135 itself. To switch"may" for "shall" in § 8135 would remove all discretion from the decision but do so in favor of the claimant, which Congress just as clearly did not mean to do. As § 8135 is currently structured, "may" merely means that the Secretary need not apply the section's factors robotically. "May" does not, as the Secretary believes, entitle him to robotically use no discretion at all - if <u>Hicks</u> stands for that proposition, the case is in error and should be overturned.

In the end, a clear-mandate analysis comes down to the impact of the statute, in subsection or entirely, on the judge. The statute clearly mandates an individualized review. Although the language alone sustains that view, the language is doubly strong when considered in light of agency power in 1916. Because the Secretary violated the clear mandate of the statute, the district court should be affirmed.

III.

Some general observations about the case are in order. First, this Court has already proven that <u>Hicks</u> is not an impenetrable rule. <u>See</u> <u>Malcomb v. Island Creek Coal Co.</u>, 15 F.3d at 369 (no deference to agency interpretation reversing, without explanation, a definition used for 60 years). While the Secretary's about face on lump sum regulations is not as egregious as the agency flip-flops of <u>Malcomb</u>, the fact that he has changed his interpretation surely adds to the argument against <u>Hicks</u> applicability here. Second, fundamental fairness suggests that where Congress has created a mechanism for benefits and

17

a claimant meets the test, he should at least be entitled to some form of review. If the Secretary merely increased stinginess toward lump sums tenfold, he might be within his discretion; however, the Secretary has gone beyond stinginess to arbitrariness. If the one-in-a-million, perfect candidate for lump sum payments were suddenly to appear, the Secretary would never know the injustice of applying his policy to that ideal claimant - even perfect evidence would never be reviewed. And third, it is remarkable that a mere regulation could in effect repeal an eighty year old statute. Conservative judicial principles would never elevate a regulation above a Congressional act, even were the regulation not questioned by the litigants. See Thomasson v. Perry, ___ F.3d ___, 1996 WL 157451, *20 (April 5, 1996) (Luttig, J., concurring) (validity of regulation is before the Court even when not raised by the parties).

Section 8149 permits the Secretary to regulate only to enforce and administer FECA, and enforcement of § 8135 by its regulatory repeal is a nonsensical result. The "prospective discretion" of 20 CFR 10.311 is no discretion, and abuse of discretion could have no clearer name. Regulatory repeal of § 8135 is a violation not only of § 8135 but of § 8149 as well. Whether considered from sound equitable principles or the coldest parsing of the statute, the Secretary's action is simply wrong.

As phrased by Hanauer's counsel at oral argument, this appeal may well be "tilting at windmills" in a certain sense. It is undisputed that were this court to remand the case for an individual review, and after doing so the Secretary still denied lump sum benefits to the claimant, the Court would have no jurisdiction under § 8128 to review his individual case. But that fact only raises a larger point. Were a bevy of Hanauers to return to district court with proof that the Secretary was performing pro forma individual review under § 8135, but actually meant to and did deny all requests, the Court's jurisdiction would reattach. The Secretary cannot do sotto voce by perfunctory denials what this dissent would deny him the power to do outright by regulatory fiat. If individual review is meaningless, as Congress's § 8135 has now been made meaningless, the clear mandate of FECA is violated.

I therefore dissent and would affirm the district court.

18