### Cleopatra McDOUGAL–SADDLER Appellant,

v.

### Alexis M. HERMAN, Secretary, U.S. Department of Labor, Appellee

No. 98–1068.

United States Court of Appeals, Third Circuit.

Argued Oct. 8, 1998.

Decided Nov. 17, 1998.

Jeffrey P. Zeelander [Argued], Philadelphia, PA; Richard B. Cappalli, Klein Hall, Philadelphia, PA, for Appellants.

Karen B. Kracov [Argued], Assistant United States Attorney, Michael R. Stiles, United States Attorney, James G. Sheehan, Assistant United States Attorney Chief, Civil Division, Nadine M. Overton, Assistant United States Attorney, Philadelphia, PA, for Appellees.

Before: McKEE, RENDELL, Circuit Judges, and DEBEVOISE, Senior District Judge.*

* Honorable Dickinson R. Debevoise, United States Senior District Judge for the District of New Jersey, sitting by designation.

## OPINION OF THE COURT

DEBEVOISE, Senior District Judge:

Appellant, McDougal–Saddler, appeals the district court's order granting the motion of Cynthia Metzler, Acting Secretary, United States Department of Labor ("DOL")[1] to dismiss the complaint for lack of subject matter jurisdiction. We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 and will affirm, although for reasons different from those upon which the district court relied.

### I.  *The Facts*

On May 14, 1982 McDougal–Saddler, then a 39–year old U.S. Postal Service distribution clerk, filed a claim with the Office of Workers' Compensation Program ("OWCP") for an injury to her back, upper neck and shoulder sustained on May 8 when handling trays of mail. On June 24 the OWCP began payment of compensation for temporary total disability. Dr. David S. Schwartz, a Board-certified internist and cardiologist, began treating McDougal–Saddler on August and diagnosed cervical and lumbosacral strains. He found his patient to be totally disabled.

After a February 1985 fitness-for-duty evaluation, McDougal–Saddler was offered and accepted reemployment as a distribution clerk with limited duties. She returned to work on March 31, 1985 but again stopped working on April 5, stating that because of pain in her neck, shoulder, arm and back she could not continue. Dr. Schwartz examined her the next day; he diagnosed cervical and lumbar strain and stated she was totally disabled.

On May 7, McDougal–Saddler filed a claim for a traumatic injury to her neck, shoulders and upper and lower back sustained on April 5 when casing mail. On May 20 the OWCP again began payment of compensation for temporary total disability. In a June 17, 1985 report Dr. Schwartz diagnosed cervical radiculopathy. In a May 22, 1986 report he diagnosed chronic pain syndrome including chronic lumbosacral strain and chronic cervical strain. In an April 10, 1987 report Dr.

1. Alexis M. Herman is presently United States Secretary of Labor.

Schwartz wrote, "Because of chronic debilitating pain and limited range of motion due to muscle stiffness and spasm, despite intensive physical therapy and medication, [McDougal–Saddler] is totally disabled from work at this time and for the near indefinite future."

The OWCP referred McDougal–Saddler to Dr. William H. Simon, a Board-certified orthopedic surgeon for a second opinion. In a May 4, 1987 report Dr. Simon diagnosed cervical and lumbar discogenic syndrome with cervical and lumbar nerve root irritation. He concluded:

Her present findings are those of cervical and lumbar discogenic syndrome due to early degenerative disc disease in the cervical and lumbar spine. This is indicative of a genetic predisposition to degenerative disc disease and is not in my opinion due to any specific incidents of trauma occurring at work ... There is no evidence that she sustained any acute injury that is responsible for this but that she has a slowly developing degenerative condition which limits the amount of work that she can do. She will have to decide whether she wishes to bear with the pain and continue her work or whether she wishes to retire from the work force.

On December 31, 1987 the OWCP notified McDougal–Saddler that it proposed to terminate her compensation on the ground that her disability resulting from her employment injuries had ceased. In response McDougal–Saddler submitted another report of Dr. Schwartz in which he stated that her symptoms were "specifically due" to her May 8, 1982 injury and that her April 5, 1985 injury "added to her previous cervical and lumbosacral strain."

Effective November 20, 1988 the OWCP terminated McDougal–Saddler's compensation on the ground that the weight of the medical evidence established that her disability from her employment injuries ceased by that date. After a hearing an OWCP hearing representative found in a February 21, 1989 decision that McDougal–Saddler had not been afforded due process because she had not been provided with a copy of Dr. Simon's May 4, 1987 report. The hearing representative remanded the case for reinstatement of compensation and a re-evaluation by Dr. Simon.

At Dr. Simon's request a Board-certified radiologist performed a computerized tomography scan of McDougal–Saddler's lumbosacral and cervical spine. On the basis of the resulting report Dr. Simon revised his original opinion, stating in a November 15, 1989 report, "we now have objective evidence that this patient has cervical discogenic abnormalities beyond degenerative changes both in her neck and back." He did not, however, attribute these discogenic abnormalities, as Dr. Schwartz did, to the 1982 and 1985 work incidents, and he disagreed with Dr. Schwartz's finding of total disability, stating, "I do think her discogenic abnormalities in her neck and back are enough to partially disable her but certainly not to totally disable her from returning to some form of work presuming that she is conditioned properly."

Based on the entirety of the reports which had been submitted to it, the OWCP found that there was a conflict of medical opinion. On October 22, 1991, it referred the case to Dr. John T. Williams, a Board-certified orthopedic surgeon, to resolve the conflict. The OWCP purported to act pursuant to the provisions of 5 U.S.C. § 8123(a), which provides: "If there is disagreement between the physician making the examination for the United States [Dr. Simon] and the physician of the employee [Dr. Schwartz], the Secretary shall appoint a third physician who shall make an examination." According to the Federal (FECA) Procedure Manual, "The [Employees' Compensation Appeals Board] has stated that 'an impartial specialist's report is entitled to greater weight than other evidence of record as long as his conclusion is not vague, speculative or equivocal and is supported by substantial medical reasoning'." Part Two, Chapter 2–810.11 c.(2).

Dr. Williams conducted a physical examination of McDougal–Saddler and in a January 21, 1992 report stated, among other things:

On my physical examination today there are no positive objective findings to correlate to her complaints. I see no residual

pathology as it relates to the injury of 1982 or 1985. I feel that she has recovered to the extent that she is able to be gainfully employed. She has degenerative changes in her cervical and lumbar spine which are compatible with her age and her type of body build. She is obese.

I feel that she is able to resume her normal duties without any restrictions. If I were to place any restrictions on this patient they would be on the basis of the degenerative pathology which obviously preexisted the work-related injury of 1982. The restrictions would be related to the degenerative changes in her cervical and lumbar spine.

Thereafter Dr. Williams reviewed the medical records and reported his findings on March 4, 1992:

[T]his degenerative pathology [in McDougal–Saddler's lumbar and cervical spine] is part and parcel of the normal aging process and has been aggravated by the patient's weight. Since the day of her accident she has been carried with a diagnosis of a cervical and lumbosacral sprain. These types of sprain strains are of a temporary and transitory nature and are selfresolving. The work-related incident may have aggravated the preexistent pathology but again on a temporary and transitory nature which resolved leaving her with her preexistent pathology.

As to x-ray findings from 1982, 1984 and 1987, Dr. Williams reported:

These studies were normal in 1982 and in 1984. Three years later in 1987 we see changes.

The patient had not been working during this interval so there is no work-related trauma that produced the findings noted on x-rays in 1987. So it was on the basis of the normal wear and tear that she began to show signs of degenerative pathology in 1987.

Dr. Williams reviewed the findings of the 1989 CT scan on the basis of which Dr. Simon modified his first report. Dr. Williams found:

So what we are seeing here is the progression of degenerative joint and degenerative disc disease over a period of approximately seven years secondary to the normal wear and tear on the body and the aging process.

The work-related injury did not cause the degenerative pathology first noted in 1987.

The OWCP terminated McDougal–Saddler's compensation on September 20, 1992, concluding that the weight of the medical evidence, represented by Dr. Williams's reports, established that the effects of her April 5, 1985 and May 11, 1982 injuries had ceased. On appeal an OWCP hearing representative found in a November 24, 1993 decision that the opinion of Dr. Williams, the impartial medical specialist, resolved the conflict of medical opinion and established that the effects of the 1982 and 1985 injuries had ceased by September 20, 1992. By letter dated February 27, 1995 McDougal–Saddler requested reconsideration, contending, among other things, that Dr. Williams was not an impartial medical specialist entitled to special weight because Dr. Simon's November 15, 1989 report did not conflict with the conclusions of Dr. Schwartz. The OWCP denied the request for reconsideration, and McDougal–Saddler appealed to the Employees' Compensation Appeals Board ("ECAB").

The ECAB authored a detailed opinion. It weighed the evidence which had been developed during the years following McDougal–Saddler's original injury in May 1982. It contrasted the qualifications of Drs. Williams and Schwartz and analyzed the basis and reasoning of their respective reports. It found "that the weight of the medical evidence establishes that [McDougal–Saddler's] disability related to her May 8, 1982 and April 5, 1985 employment injuries ended by September 20, 1992."

The ECAB, however, agreed with McDougal–Saddler's contention that Dr. Williams was not an impartial medical specialist, not because he was not impartial, but rather because at the time of his appointment there was no conflict of medical opinion:

Appellant is correct in arguing that Dr. Williams was not an impartial medical specialist because there was no conflict of medical opinion at the time of the Office's referral to Dr. Williams. The reports of

Dr. Simon, the Board-certified orthopedic surgeon whose second opinion was the basis of the Office's declaration of a conflict of medical opinion, were not sufficient to create such a conflict. In his report dated October 25, 1989, Dr. Simon stated that appellant's "only findings are those of progressive degenerative changes in her neck and back and these certainly would not be causally related to one episode of trauma occurring in 1982 or in 1985" and that "there is no evidence that she has a disc herniation or fracture or dislocation or serious lumbar stenosis problem that would functionally incapacitate her." In his report dated November 15, 1989, Dr. Simon stated that a CT scan done on November 13, 1989 showed "objective evidence that this patient has cervical discogenic abnormalities beyond degenerative changes both in her neck and back." While Dr. Simon did not attribute these "discogenic abnormalities beyond degenerative changes" to appellant's employment injuries, his November 15, 1989 report casts serious doubt on the conclusion in his October 25, 1989 report that appellant had only progressive degenerative changes.

(App. A 41)

The consequence which the ECAB attributed to the denial of impartial medical specialist status to Dr. Williams was " ... the reports of Dr. Williams are thus not entitled to the special weight afforded to the opinion of an impartial medical specialist resolving a conflict of medical opinion ... " The ECAB treated Dr. Williams's reports in the same manner as it treated the other medical evidence, giving it no special deference. On March 20, 1996 it affirmed the decision of the OWCP and thereafter denied a petition for reconsideration.

## II. *The District Court Decision*

FECA does not provide for an appeal of an adverse decision of the ECAB. In fact it decrees finality to such a decision:

(a) The Secretary of Labor may review an award for or against payment of compensation at any time on his own motion or on application. The Secretary, in accordance with the facts found on review, may—

(1) end, decrease, or increase the compensation previously awarded; or

(2) award compensation previously refused or discontinued.

(b) The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—

(1) final and conclusive for all purposes and with respect to all questions of law and fact; and

(2) not subject to review by another official of the United States or by a court by mandamus or otherwise.

5 U.S.C. § 8128.

Nevertheless, McDougal–Saddler filed a complaint and petition for declaratory and injunctive relief in the district court, alleging that DOL has adopted procedures which undercut the statutory directive regarding the appointment of the third physician. She contends that they are subject to review by this court because these procedures violate the clear mandate of the applicable statute and regulation. The complaint cites 5 U.S.C. § 8123(a) which provides in relevant part:

If there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary **shall appoint a third physician who shall make an examination.** (emphasis added).

The complaint cites 20 C.F.R. § 10.408 which provides:

If there should be disagreement between the physician making the examination on the part of the United States and the injured employee's physician, the Office **shall appoint a third physician, qualified in the appropriate specialty, who shall make an examination** ... (emphasis added).

McDougal–Saddler's complaint alleges that the language of the statute is unambiguous and mandatory as reflected in the regulation quoted above. That is, whenever there is any disagreement between the employee's and OWCP's physician, the OWCP *must* appoint a third physician. In its Federal (FECA) Procedural Manual and in practice according to McDougal–Saddler's complaint,

OWCP has departed from the statutory command and appoints a third physician only "where the analysis of the evidence demonstrates conflicting opinions or conclusions which are supported almost equally." Generally "[c]areful analysis of the medical evidence should allow for resolution of most issues without resorting to a referee or 'impartial' specialist" (Federal (FECA) Procedure Manual, Part Two, Chapter 2–810–11 a, App. 53). This weighing the evidence procedure, according to the complaint, constitutes a clear violation of § 8123(a).

Defendant moved in the district court pursuant to Fed.R.Civ.P. 12(b)(1) seeking dismissal of the complaint for lack of subject matter jurisdiction. It asserted that § 8128(b) of FECA bars judicial review of DOL's adjudication of McDougal–Saddler's FECA claim. It asserted that the allegations of the complaint do not constitute a substantial, cognizable constitutional claim over which the district court would have jurisdiction despite § 8128(b). Finally it asserted that there was no exception under § 8128(b) for claims of a violation of a clear statutory mandate and, in any event, the allegations of the complaint do not constitute such a claim.

The district court noted that there is an exception to FECA's prohibition of judicial review if a plaintiff presents a "cognizable" constitutional violation. *Rodrigues v. Donovan,* 769 F.2d 1344 (9th Cir.1985); *Czerkies v. Department of Labor,* 73 F.3d 1435, 1438 (7th Cir.1996). The district court also noted that some courts of appeals have recognized a second exception to the prohibition if the plaintiff establishes that the actions of the Department of Labor violate a "clear statutory mandate", see, *e.g., Hanauer v. Reich,* 82 F.3d 1304, 1309 (4th Cir.1996).

The district court rejected McDougal–Saddler's constitutional claim. It held that FECA PM2–810 providing for a weighing of the medical evidences before appointing a third physician was simply an interpretive rule clarifying the word "disagreement" in § 8123(a) and therefore did not require public notice or a public comment period to be valid. Its application to McDougal–Saddler did not violate her due process rights or

otherwise create a cognizable constitutional claim. McDougal–Saddler does not challenge this ruling in her appeal.

The district court assumed for the purposes of its decision that a violation of a clear statutory mandate creates subject matter jurisdiction for a court to hear a case brought under FECA. It found, however, that because the ECAB interpretation was plausible, there was no such violation, holding:

> The Court concludes that FECA PM2–810 instructs claims examiners in how to determine whether a "disagreement" between physicians exists, and that defendant's interpretation of 5 U.S.C. § 8123(a), using FECA PM 2–810, is plausible. Under that interpretation, it was appropriate for ECAB to decide plaintiff's claim based on the weight of the medical evidence. ECAB did not violate a clear statutory mandate in evaluating plaintiff's claim. The statute did not, under the facts presented, require ECAB to remand the case for the appointment of an independent physician to conduct an examination of plaintiff.

The court granted DOL's motion to dismiss.

### III. *Discussion*

This appeal raises important jurisdictional and substantive questions which our court has not addressed.

The language of § 8128(b) is open to differing interpretations. It provides that "[t]he action of the Secretary or her designee in allowing or denying a payment ..." is (1) final and conclusive for all purposes ..." It can be argued, as McDougal–Saddler does, that the words "allowing or denying a payment" refer to decisions in individual cases and do not include challenges to "structural components of the system." *Czerkies v. U.S. Dept. of Labor,* 73 F.3d 1435 (7th Cir.1996). In dicta four circuits have asserted § 1331 jurisdiction to review claims that OWCP policy violated clear statutory commands. See *Staacke v. United States Secretary of Labor,* 841 F.2d 278, 281–82 (9th Cir.1988), citing *Oestereich v. Selective Serv. Sys.,* 393 U.S. 233, 89 S.Ct. 414, 21 L.Ed.2d 402 (1968) and

*Leedom v. Kyne,* 358 U.S. 184, 79 S.Ct. 180, 3 L.Ed.2d 210 (1958)(finding no clear statutory command); *Woodruff v. United States Dep't of Labor,* 954 F.2d 634, 639–40 (11th Cir. 1992); (same); *Brumley v. United States Dep't of Labor,* 28 F.3d 746 (8th Cir. 1994)(same); *Hanauer v. Reich,* 82 F.3d 1304, 1307–09 (4th Cir.1996).

McDougal–Saddler makes a plausible argument that the procedures specified in the FECA Procedures Manual violate the clear mandate of § 8123(a). The statute provides that "[i]f there is disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary *shall* appoint a third physician who shall make an examination" (emphasis added). The Procedure Manual requires that OWCP examiner shall engage in a weighing process evaluating the reports of the two physicians and appointing a third physician only "where the analysis of the evidence demonstrate conflicting opinion or conclusions which are almost equally supported" (FECA Bulletin 83–56 (Nov. 9, 1983)). The reasons for these procedures are suggested in the bulletin mandating them:

> In many cases, the findings or opinions of an independent specialist will differ from those of the claimant's attending physician. Previously the tendency in such cases was to automatically refer the claimant and the case record to an impartial specialist. This is a time-consuming process which is not always necessary. Frequently, a decision can be reached by weighing the medical evidence of record without referral to an impartial specialist.

On the present appeal DOL has added extra cost as well as consumption of time as a reason to curtail use of a third physician. If in fact the statute requires the appointment of a third physician these are considerations which DOL should present to Congress rather than departing from a statutory mandate.

Despite the importance of the jurisdictional and substantive issues which McDougal–Saddler raises, they cannot be addressed in this case. A third physician, Dr. Williams, was in fact appointed to review her physical condition; she has received that to which she was entitled under § 8123(a) and thus there is no case or controversy.

FECA establishes a comprehensive and exclusive worker's compensation scheme for federal employees. The Secretary of Labor, or his or her designee, has the authority to administer and to decide all questions arising under FECA. 5 U.S.C. § 8145. Pursuant to this authority the Secretary has delegated the authority provided by §§ 8145 and 8149 to the OWCP, which is responsible for the administration and implementation of FECA. 20 C.F.R. § 10.2. Pursuant to statutory mandate the ECAB was established to hear and make final decisions on appeals taken from determinations and awards with respect to claims.

The regulations provide that "once OWCP has accepted a claim and paid compensation, it has the burden, before terminating ... compensation, of establishing by the weight of the evidence that the disability for which compensation was paid has ceased ..." 20 C.F.R. § 10.110. If a claimant considers herself aggrieved by the OWCP's final determination, FECA provides the means for review. From the date of the decision, the claimant may: (1) within 30 days, request a hearing before an OWCP hearing representative or request that such representative review the written record, 5 U.S.C. § 8124, 20 C.F.R. § 10.131; (2) within one year, request reconsideration, 5 U.S.C. § 8128, 20 C.F.R. § 10.138; or (3) within one year, file an appeal with the ECAB. 20 C.F.R. § 10.139.

It is in the context of this claims and appeals process that § 8123(a) requires that "[i]f there is a disagreement between the physician making the examination for the United States and the physician of the employee, the Secretary shall appoint a third physician who shall resolve the conflict." See also 20 C.F.R. § 10.408 which mirrors this statutory language but adds the requirement that the third physician be qualified in the appropriate specialty.

As recited above in the statement of the facts both the OWCP and McDougal–Saddler followed these procedures when on December 31, 1987 the OWCP notified McDougal–Saddler that it proposed to terminate her

compensation and thereafter when the termination was effected on November 20, 1988 and hearings and appeals were pursued.

McDougal–Saddler submitted a number of reports of Dr. Schwartz in which he described her back and shoulder conditions, attributed them to the April 5, 1985 and May 11, 1982 work incidents, and opined that McDougal–Saddler was totally disabled from work. Dr. Simon submitted a May 4, 1987 report in which he stated that McDougal–Saddler's condition was genetic and not due to any specific incidents of trauma at work. In 1989, after Dr. Simon received a CT scan report which he had requested, he modified his opinion and stated that there was objective evidence that McDougal–Saddler had cervical discogenic abnormalities beyond degenerative changes both in her neck and back. He did not attribute these abnormalities to the 1982 and 1985 work incidents, and he did not agree with Dr. Schwartz that the abnormalities prevented McDougal–Saddler from returning to some form of work.

It was readily apparent that even though Dr. Simon modified his original opinion, there was a significant area of disagreement between him and Dr. Schwartz. Even though for the purposes of its opinion the ECAB chose not to treat this as a "disagreement" between the two physicians, it was clearly a "disagreement" within the plain meaning of § 8123(a).

The OWCB was justified in concluding that there was a disagreement between the physician making the examination for the United States and the physician of the employee. It acted well within the statute and regulations when it appointed Dr. Williams as a third physician. The record demonstrates that Dr. Williams did everything that a third physician is supposed to do, examining McDougal–Saddler, reviewing the medical records and providing a comprehensive report setting forth his findings and the reasons for his findings.

McDougal–Saddler received everything she was entitled to by way of appointment of a third physician. The decision of the ECAB not to recognize Dr. Williams as a third physician does not change this conclusion. That decision only worked to McDougal–Sad-

dler's benefit. Dr. Williams's report was adverse to her position. By failing to treat it as the report of a third physician, the ECAB deprived it of special weight status and treated it in the same manner it treated other medical evidence.

Thus regardless of DOL's interpretation of § 8123(a), McDougal–Saddler received the benefit of the third physician provision. She has not been injured by the manner in which the OWCB may treat the third physician requirement in other cases, and her complaint in effect seeks simply an advisory opinion. Article III § 2 of the Constitution confers jurisdiction in the federal courts over "cases" and "controversies." To constitute a case or controversy, there must be a plaintiff who has standing to bring the action. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). To have standing a plaintiff must establish:

> An "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; second, there be a causal connection between the injury and the conduct complained of—the injury has to be "fairly trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court". Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Id.* at 560–61, 112 S.Ct. 2130.

McDougal–Saddler sought declaratory and injunctive relief that would have had the effect of restoring her benefits until she had been evaluated by an impartial specialist. The complaint also sought a declaration that "DOL's action in terminating plaintiff's compensation benefits without following 5 U.S.C. 8123(a) and 20 CFR 10.408 is not permitted by the Federal Employees' Compensation Act, 5 U.S.C. 8101 et seq." and "a permanent injunction directing DOL to restore to all other FECA claimants their entitlement to benefits that DOL has terminated or otherwise reduced in violation of the provisions of

5 U.S.C. § 8123(a) and 20 CFR 10.408 until such time as DOL has carried out the requirements [of] 5 U.S.C. 8101 et seq."

As noted above, McDougal–Saddler has received the benefit of § 8123(a)'s third physician requirement. There is no likelihood that she will in the future be filing a claim with the OWCP. Thus she has suffered no injury resulting from DOL's application of § 8123(a) and is not likely to suffer such injury in the future. Her requests for declaratory and injunctive relief challenging the DOL's application of § 8123(a) might benefit other persons, but she herself lacks a cognizable interest in the outcome of this case. In these circumstances McDougal–Saddler does not have standing, and it was appropriate for the district court to dismiss this case. *Fair Housing Council v. Montgomery Newspapers,* 141 F.3d 71, 80 (3d Cir.1998); *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 698–99 (3d Cir.1996).

## IV. *Conclusion*

For the foregoing reasons, we will affirm the district court's order granting the DOL's motion to dismiss the complaint.