Frank SENERCHIA, Plaintiff–Appellant,

v.

UNITED STATES of America, Department of Labor, Office of Workers' Compensation Programs, U.S. Department of Labor, Thomas Markey, Commissioner and Michael Walsh, Commissioner, United States Department of Labor Employee Compensation Appeals Board, Defendants–Appellees.

Docket No. 00–6027.

United States Court of Appeals, Second Circuit.

Argued Oct. 13, 2000.

Decided Dec. 19, 2000.

130

Maranda E. Fritz, Fritz & Miller, New York, NY, for Plaintiff–Appellant.

Kathleen A. Zebrowski, Assistant United States Attorney, Mary Jo White, United States Attorney for the Southern District of New York (Gideon A. Schor, on the brief), New York, NY, for Defendants–Appellees.

Before WALKER, Chief Judge, VAN GRAAFEILAND, Circuit Judge, and MARRERO, District Judge.*

VAN GRAAFEILAND, Circuit Judge:

Frank Senerchia ("Senerchia"), a retired detective with the New York City Police Department ("NYPD"), appeals from a final judgment of the United States District Court for the Southern District of New York (Griesa, J.). The district court granted a motion to dismiss Senerchia's attempt to have the federal courts review and reverse a determination that Senerchia was not entitled to benefits under the Federal Employees' Compensation Act

---

* The Honorable Victor Marrero, of the United States District Court for the Southern District of New York, sitting by designation.

("FECA"), 5 U.S.C. § 8101 *et seq.* For the reasons that follow, we affirm.

In 1983, the federal Bureau of Alcohol, Tobacco and Firearms ("ATF") was conducting undercover operations looking for criminals involved in weapons and narcotics trafficking. NYPD was assisting ATF in these efforts. On November 9, 1983 Senerchia and an ATF agent were conducting mobile surveillance in an ATF vehicle. Senerchia was driving. The vehicle was involved in a traffic accident, and Senerchia was injured.

In 1984, Senerchia applied for compensation benefits under FECA. FECA provides compensation for state officers who are injured while they are engaged in apprehending federal criminals or preventing federal crimes. *See* 5 U.S.C. § 8191. In 1985, the Office of Workers' Compensation Programs ("OWCP") at the Department of Labor denied Senerchia's claim. OWCP reasoned that, at the time Senerchia was injured, he was involved only in surveillance in an attempt to uncover possible future wrongdoing. According to OWCP, there was no federal crime occurring at the time Senerchia was injured. Senerchia was entitled to appeal OWCP's decision, but did not do so immediately. He waited until 1994 to request reconsideration of OWCP's 1985 decision. Senerchia explains that he waited so long because it was not until 1994 that a doctor told him his injuries from the 1983 accident had worsened to the point he was forced to retire from NYPD.

Senerchia's request for reconsideration was denied by OWCP. Senerchia then appealed OWCP's decision to the Employees' Compensation Appeals Board ("ECAB"), also in the Department of Labor. ECAB rejected Senerchia's appeal. *In the Matter of Frank Senerchia,* 1997 WL 1877301 (ECAB Sept. 2, 1997). Senerchia then turned to the district court. Senerchia asked the district court to review and reverse the ECAB decision.

The defendants moved to dismiss for lack of subject matter jurisdiction. They relied on a provision of FECA, 5 U.S.C. § 8128(b), which states that "[t]he action of the Secretary [of Labor] or [her] designee in allowing or denying a payment under this subchapter is ... (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."

The district court granted the motion to dismiss, holding that § 8128(b) divested it of subject matter jurisdiction. The district court recognized that several circuits have held that § 8128(b)'s ban on jurisdiction is not absolute, even though the statute itself states unequivocally that the courts shall not exercise jurisdiction. Some circuits have recognized two possible exceptions to this ban. First, if a claimant contends that the government violated his constitutional rights in denying his compensation claim, jurisdiction may be available. Second, some courts have thought jurisdiction exists if the government violates a clear statutory mandate. Because Senerchia did not argue that his constitutional rights had been violated, the district court looked primarily at the second exception. It held that the government had not violated a clear statutory mandate and dismissed the action.

The Second Circuit has not addressed squarely the issue of whether an exception to § 8128(b)'s ban on jurisdiction exists when the government clearly exceeds its statutory authority. Other circuits have not spoken in unison on this issue. *Compare McDougal–Saddler v. Herman,* 184 F.3d 207, 213–14 (3d Cir.1999) (finding no exception for clear statutory violations); *Paluca v. Secretary of Labor,* 813 F.2d 524, 527–28 (1st Cir.1987) (same) *with Hanauer v. Reich,* 82 F.3d 1304, 1307–09 (4th Cir.1996) (determining that federal courts have jurisdiction to hear claims that government violated clear statutory mandate); *Woodruff v. United States Department of Labor,* 954 F.2d 634, 639–40 (11th Cir. 1992) (per curiam).

██ Assuming an exception for clear statutory violations exists, judicial review of such violations is extremely limited. Even the Fourth Circuit, which recognizes jurisdiction to hear claims that Labor violated a clear statutory mandate of FECA, *see Hanauer*, 82 F.3d. at 1304, recognizes the limited scope of judicial review. *Id.* at 1309 ("When the statute in question is capable of two plausible interpretations, the Secretary's decision to adopt one interpretation over the other does not constitute a violation of a clear statutory mandate."). *See also Woodruff*, 954 F.2d at 641 (11th Cir.1992) ("Our task is not to develop our own interpretation . . ., nor is it to choose the best of two competing interpretations."). Thus, so long as the government's interpretation of FECA is reasonable, no clear statutory mandate has been violated.

██ Senerchia's claim that Labor violated a clear statutory mandate rests, in part, on his argument that prior ECAB decisions dictate that Senerchia be awarded compensation in this case. Even if Senerchia is correct that ECAB's decision in this case is contrary to ECAB's prior interpretations of § 8191, that would only make the decision contrary to prior agency rulings; it would not necessarily make the decision contrary to a clear statutory command. Absent a separate statutory provision that requires the government to abide by its prior interpretations, in effect codifying an absolute rule of *stare decisis*, any asserted inconsistency between the decision in this case and prior ECAB decisions is irrelevant. The relevant question is whether ECAB's current interpretation is clearly contrary to the statute.

██ Senerchia also emphasized, in both his brief and at oral argument, that the government's denial of benefits in this case runs contrary to the purpose of § 8191. While knowledge of the purpose of a statute assists in the interpretation of that statute, violation of the purpose, without violation of a statutory command, does not constitute a violation of a clear statutory

mandate. We turn, therefore, to the clear statutory command that was allegedly violated, 5 U.S.C. § 8191.

██ The statute provides, in relevant part, that a state officer is entitled to federal benefits if the state officer was engaged "on that occasion in the apprehension or attempted apprehension of any person." 5 U.S.C. § 8191(1). The government concluded that Senerchia was not eligible for benefits under this section because Senerchia was involved only in surveillance, and at the time he was injured he was not apprehending anyone. This interpretation is reasonable, for apprehension could reasonably be interpreted to require a physical encounter, *e.g.* an arrest attempt. *See* Black's Law Dictionary 97 (7th ed. 1999).

A more difficult question is presented by 5 U.S.C. § 8191(3), which provides for compensation if the state officer is involved, "on that occasion in the lawful *prevention* of, or lawful *attempt to prevent*, the commission of a crime against the United States." 5 U.S.C. § 8191(3) (emphasis added). Surveillance, which involves determining whether a crime is taking place and who is involved, seems very close to prevention. *See* Webster's Third New International Dictionary Unabridged at 1798 (1971) (defining "prevent" as "to keep from happening or existing esp. by precautionary measures.").

Neither OWCP nor ECAB analyzed whether surveillance constitutes prevention. OWCP's 1985 "Denial of Claim" order stated, without any explanation, that "the injury did not occur under circumstances which would bring it within the provisions of 5 U.S.C. 8191." An internal OWCP memorandum, prepared in advance of the 1985 decision, analyzed the "apprehension" issue, but did not state anything about "prevention," other than the conclusion that "[n]either was he engaged in the lawful prevention of, or lawful attempt to prevent, the commission of a crime against the United States as enumerated in 5

U.S.C. 8191.(1)(3)[sic]." An internal memorandum prepared in advance of OWCP's 1995 decision sheds no more light on the government's interpretation: "[T]here was on that occasion no actual federal crime, a prerequisite for a finding that there had been an attempt to apprehend someone for the commission of a federal crime. It was also determined that he was not attempting to prevent a federal crime on that occasion."

Our review of the government's interpretation of § 8191(3) has been made difficult because at no time did either OWCP or ECAB discuss the meaning of "prevention" in any detail. As far as we can divine, OWCP and ECAB apparently thought that both apprehension and prevention required an actual federal crime at the time the acts of apprehension or prevention occurred. It seems to us that this might not be true of "prevention," for acts of prevention could occur in advance of the criminal act. For example, putting more police on the street is commonly thought to be an act of prevention.

However, our task is not to decide the best interpretation of the statute, but only to decide whether OWCP's and ECAB's interpretation is reasonable. As we understand that interpretation, Senerchia's surveillance was not prevention because, at the time, the authorities were not certain that a specific crime was being committed, or even contemplated.

The government's interpretation of what was transpiring was not so egregious as to be clearly contrary to the statute. *Cf. Staacke v. United States Secretary of Labor*, 841 F.2d 278, 281–82 (9th Cir.1988) (noting that the clear statutory mandate exception is a "narrow window," and that the government has "virtually limitless" discretion to decide FECA eligibility issues).

The decision of the district court is affirmed.